20723. LIVINGSTON *et al. v.* KING *et al.,* Commissioners.

ARGUED JANUARY 11, 1960—DECIDED FEBRUARY 12, 1960.

*James W. Dorsey, Nall, Miller, Cadenhead & Dennis, Joseph M. Rogers,* for plaintiffs in error.

*Young, Hollis & Moseley, W. H. Young, Jr., Jack T. Brinkley,* for party at interest not party to record.

*Foley, Chappell, Kelly & Champion, Chas. M. Evert,* contra.

ALMAND, Justice. Mrs. E. J. Livingston and others, as citizens and taxpayers, in an equitable action sought to enjoin Ralph I. King and others, Commissioners of Roads and Revenues of Muscogee County, from allegedly illegally diverting funds derived from the sale of Traffic Improvement Bonds. The petition was dismissed on general demurrer.

The petition alleged: That in 1953 an election was held in Muscogee County, authorizing the issuance of $500,000 in Traffic Improvement Bonds. The election was held pursuant to a resolution adopted by the defendant commissioners, wherein it was stated that Muscogee County had the authority under the Constitution and laws of Georgia, "to do all things necessary to acquire, build, construct and maintain expressways or superhighways so as to afford better facilities for the orderly movement of traffic of all kinds," and that "there is now contemplated the ac-

quisition and construction of an expressway or superhighway extending from the city limits of Columbus to the county line" to replace the present Warm Springs Road. It was resolved that Traffic Improvement Bonds be issued "for the purpose of providing funds to be used for and applied towards the acquisition and construction of expressways, by-passes, overpasses, underpasses, approaches, bridges, viaducts, streets and walkways, and other facilities useful in connection therewith, acquire the necessary property therefor and pay damages, direct or consequential, arising therefrom and expenses incident thereto and to accomplish the foregoing, in whole or in part, to contribute funds to others for that purpose where the undertaking is to be performed by such political entity." It was alleged that the defendants have completed construction of one leg of the expressway specified in the resolution, for which they have expended more than half of the bond proceeds; that the defendants are now preparing to spend the balance of the bond funds in acquiring the right of way and in constructing "a limited access superhighway or expressway" from the end of the completed leg of the Warm Springs Road to the county line. It was also alleged that the expenditure of these funds could not legally be made for the purpose of constructing a "limited-access highway"; and the bond funds being trust funds, the defendants should be enjoined from diverting the funds for purposes not authorized by the resolution calling the election.

The contention of the plaintiffs is that in 1953, when the issuance of the road bonds was authorized, Muscogee County could not legally construct a limited-access highway, and since the authority to construct such a highway was not given until 1955 by an act of the legislature (Ga. L. 1955, p. 559), these bond funds cannot be used for a purpose not authorized at the time of the bond election.

We are of the opinion that it is of minor importance as to whether the county in 1953 had authority to construct a limited-access highway, as defined in the act of 1955, supra, p. 560, to be "a highway, road or street for through traffic and over, from or to which owners or occupants of abutting land, or other persons, have no right or easement or only a limited right or ease-

ment of access, light, air or view by reason of the fact that their property abuts upon such limited-access highway or for any other reason."

The controlling question is: Are the defendants illegally diverting the bond funds from the project or purpose for which the bonds were authorized to be issued? The resolution calling the bond election in 1953 recited the necessity to replace the Warm Springs Road from the city limits of Columbus to the county line by the acquisition and construction "of an expressway or superhighway"; and it was resolved that the proceeds from the sale of the Traffic Improvement Bonds would be used towards "the acquisition and construction of expressways, by-passes, overpasses, underpasses, approaches, bridges, viaducts, streets and walkways, and other facilities useful in connection therewith, acquire the necessary property therefor, and pay damages, direct or consequential." It is apparent from the pleadings that the defendants have used all except approximately $65,000 of the funds in the construction of the "expressway" on the old Warm Springs Road and now are preparing to complete the remainder of the road to the county line by construction of a "limited-access highway." The balance of the funds is being used on the same project for which the bonds were issued and for the same purpose, that is, the construction of an expressway or superhighway from the city limits of Columbus to the county line.

It is apparent that the bonds were voted for the purpose of improving the traffic facilities on the Warm Springs Road between the city limits of Columbus and the county line, so as to afford an orderly movement of traffic of all kinds. Whether such road be called an "expressway," "superhighway" or "limited access highway," the expenditure of the bond funds now proposed to be used in the completion of this highway is in accordance with the specific purpose for which the bonds were issued in 1953, and would not amount to an illegal diversion of the bond funds for another and different purpose.

The case of *Marks* v. *Richmond County*, 165 *Ga.* 316 (140 S. E. 880), relied on by the plaintiffs is not applicable. It was there held, by a divided bench, that a county could not use bond funds, issued to pave stretches of State highways then in exist-

ence which traverse the County of Richmond, to pave a new relocated State highway, the location of which was determined after the election.

The trial court properly sustained the general demurrers and dismissed the petition.

*Judgment affirmed. All the Justices concur.*